United States District Court
Eastern District of Texas
Tyler Division

| | |
|---|---|
| Mass Engineered Design, Inc.<br><br>            Plaintiff<br><br>vs.<br><br>Planar Systems, Inc.<br><br>            Defendant | Civil Action No. 6:14-cv-00414-LED |

**Planar's Reply In Support Of Motion To Dismiss Or To Transfer Venue**

**I. Introduction**

The court should grant Planar's motion to dismiss because this District is not a proper venue for this case. Mass Engineered Design ("MED") does not deny that the venue statute expressly states that this venue improper unless Planar "has committed acts of infringement and has a regular and established place of business" in this District.[1] The complaint alleges no such facts. In arguing to the contrary, MED removed and altered allegations from its complaint to make the "quoted" passages say something different from what the complaint actually says.

In the alternative, if this court denies the motion to dismiss, it should transfer this case to the District of Oregon. Planar has identified witnesses, documents, and physical exhibits in Oregon. MED identifies zero witnesses, zero documents, and zero physical evidence in this District. The only ties to this District that MED can identify are MED other lawsuits here against unrelated defendants. However, this court has held many times that the existence of other cases in this District concerning the same patents but against unrelated defendants is of slight importance to a venue motion.

**II. Venue Is Improper In The Eastern District Of Texas**

MED does not dispute that the venue statute states: "Any civil action for patent

---

[1] 28 U.S.C. § 1400(b)

infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."[2]

The parties agree that Planar is an Oregon corporation residing in Oregon, so the first prong of the venue statute is negated.[3] MED's opposition does not dispute that Planar is an Oregon corporation with its principal place of business in Oregon.

MED's opposition fails to show how the second prong of the venue statute can be satisfied. Planar presented unrebutted evidence that it has no "regular and established place of business" in this District. This alone negates the second prong of the statute, and the court can stop here if it wishes. MED's opposition goes on to claim that its complaint alleges that Planar committed acts of infringement in this District. It does so by altering the language of the complaint, which actually says something quite different. MED misleadingly "quotes" paragraph 8 of its complaint: "Defendant … directly offers for sale [and] sells … the accused products … in the Eastern District of Texas." However, behind these omission and editing marks lie quite different allegations. Paragraph 8 actually alleges that Planar *might* have done some unspecified acts of direct infringement "directly and/or through intermediaries" "and/or" that Planar *might* have induced or contributed to the infringement of others. Contrary to MED's fabricated wordsmithing, the complaint does not allege that Planar made, sold, offered for sale, used, or imported a product here. If MED meant to allege such acts but failed to due to inadvertence, then the complaint fails to provide fair notice to Planar of the conduct that MED alleges to be unlawful. MED chose to use compound constructions that all stem from this "directly and/or through intermediaries" and "and/or" language, which renders all the other allegations of paragraph 8 incomplete and teetering on the edge of failing to state a claim for relief. Put simply, the complaint alleges no facts that might put Planar on fair notice that it is alleged to have directly infringed any patent within the Eastern District of Texas.

---

[2] 28 U.S.C. § 1400(b)
[3] Complaint ¶ 3; Motion at page 2

MED also insinuates that the second prong of the venue statute is satisfied by pointing vaguely to an out-of-context statement in Planar's 10-K. However, that statement in Planar's 10-K arises out of activity in Texas that was not within this District and has no relevance to this case. MED proffers no additional facts with this argument and so fails to meet the threshold of even alleging that this report has relevance to the venue analysis. Notably, MED seems to acknowledge that full disclosure of the context surrounding this report would support Planar, since MED did not ask for leave to conduct early discovery on this point.

### III. In The Alternative, The Court Should Transfer This Case To The District Of Oregon

#### A. MED is an absentee plaintiff with no ties to Texas or this District

MED is an absentee plaintiff who never comes to Texas, except to take advantage of this court's patent docket. MED tries to paint itself as a Texan with "significant ties to this District", but its only examples are lawsuits that it filed here.[4] This court rejects such charades:[5]

> The Court will not permit the existence of separately filed cases to sway its transfer analysis. Otherwise, a plaintiff could manipulate venue by serially filling cases within a single district. Allowing a plaintiff to manufacture venue based on this alone would undermine the principals underpinning transfer law and the recently enacted America Invents Act. See Leahy Smith America Invents Act, 35 U.S.C. § 299 (2011) (codifying new law for determining proper joinder in patent cases).

#### B. The private interest factors weigh in favor of transfer

##### (1) No witnesses or evidence are in this District

Planar has identified four witnesses in Oregon, a large trove of documentary evidence in Oregon, and many pieces of physical evidence in Oregon. Meanwhile, MED fails to identify a single witness, document, or piece of physical evidence in this District.

The closest MED can get to tying this case here is the unsupported claim that its counsel

---

[4] Opposition at pages 2–4
[5] *See e.g.*, *Geotag Inc. v. Starbucks Corp. et al.*, 2013 U.S. Dist. Lexis 58575 at *28 (E.D. Tex. 2013) ("*Starbucks*"); *Geotag, Inc. v. Aromatique, Inc., et al.*, 2013 U.S. Dist. Lexis 173481 at *35 (E.D. Tex. 2013) ("*Aromatique*"); *Geotag, Inc. v. Zoosk, Inc.*, Case No. 2:11-cv-00403, Docket No. 114 ("*Zoosk*") at 10–11; *Geotag, Inc. v. Classified Ventures, LLC*, Case No. 2:11-cv-00426, Docket No. 103 ("*Classified Ventures*") at 10; *Geotag, Inc. v. Fred's, Inc.*, Case No. 2:12-cv-00478, Docket No. 70 ("*Fred's*") at 10

in Houston — outside of this District but still in Texas — has possession of some documents that MED gave to it. MED offers no reason why it cannot give the same documents to counsel in Oregon.

### (2) No identified witness prefers to travel to Texas over Oregon

Planar also identified witnesses in Taiwan who all prefer to travel to Oregon rather than Texas because Planar has physical facilities in Oregon where they can work while visiting this country. Meanwhile, MED has identified two employee-witnesses in Toronto, Canada and offers no reason why they might personally prefer to travel to Texas rather than to Oregon. Even if some personal preference existed, the preferences of MED's employees should be discounted because MED itself already chose to ignore them. Had MED wished to minimize its employees' travel, MED would have filed suit in the Western District of New York, where the courthouse in Buffalo is a mere 60 miles from Toronto. For the same reason, MED's costs of transporting its employees the "extra" distance to Oregon must be discounted because MED has already chosen to force its employees to travel over 1,100 miles.[6] Meanwhile, all of Planar's witnesses prefer Oregon because it is either their home, cheaper for them to travel there, and more convenient for working around the court's schedule.

### (3) Practical considerations weigh in favor of transfer or are, at worst, neutral

MED does not directly respond to the practical problem Planar raised of needing commercial rental facilities to house bulky physical exhibits during trial. It argues chiefly that, in the past, it managed exhibits during prior trials. This does nothing to erase the added expense and logistical planning needed for a trial in Texas that would not exist for a trial in Oregon.

MED only raises one potential practical factor that it contends should weigh against transferring this case to Oregon: the fact that MED has filed many other lawsuits here. This court has rejected this argument many times, holding that this fact is neutral:[7]

---

[6] Opposition at page 15
[7] *Starbucks*, 2013 U.S. Dist. Lexis 58575 at *27–28; *Aromatique*, 2013 U.S. Dist. Lexis 173481 at *34–35; *Zoosk* at 10–11; *Fred's* at 10; *Classified Ventures* at 10

> This litigation involves over 100 cases against in excess of 400 defendants. Although GeoTag asserts the '474 patent in each case, none of the cases involve related defendants or overlapping products or services. GeoTag argues that having a single court familiar with the facts and legal issues would produce significant gains in judicial economy. The Court disagrees.
>
> Although all of the cases involve infringement claims, none of them share the same accused services. GeoTag claims that common issues between defendants provide gains in efficiency. But this argument is unavailing. GeoTag has not pointed to any "common issues" that would not be present in all infringement cases (i.e. claim construction). This is not a situation where other practical problems jeopardize the easy, expeditious, and inexpensive trial of this dispute. …
>
> Since this case is still in its infancy, and because problems with judicial economy do not exist, this factor is neutral.

In other cases, this court held that this fact weighs only slightly against transfer:[8]

> As the Court has previously acknowledged, certain stages of the related litigation, such as claim construction and certain discovery matters, could be more efficiently managed through consolidated measures. *See In re EMC*, 677 F.3d 1351, 1360 (Fed. Cir. 2012). But the Court also acknowledges that in this instance, the excessively high volume of Defendants (much higher than in most patent litigation), with little overlap in the accused products, creates case management issues not normally encountered by the Court. Although the Court is confident that these issues can be effectively and efficiently managed, the presence of the additional case management burden cannot be ignored.
>
> However, in view of the number of common or related issues among the related cases, the Court views the balance of this factor to weight slightly against transfer.

---

[8] *Blue Spike LLC v. Zietra LLC*, Case No. 6:12-cv-00499, Docket No. 1359 ("*Zietra*") at 8; *Blue Spike LLC v. Kronos Inc.*, Case No. 6:12-cv-00499, Docket No. 1363 ("*Kronos*") at 8–9; *Blue Spike LLC v. SoundHound Inc.*, Case No. 6:12-cv-00499, Docket No. 1356 ("*SoundHound*") at 8; *Blue Spike LLC v. Iris ID Systems Inc.*, Case No. 6:12-cv-00499, Docket No. 1357 ("*Iris ID*") at 8; *Blue Spike LLC v. Google Inc.*, Case No. 6:12-cv-00499, Docket No. 1358 ("*Google*") at 8; *Blue Spike LLC v. Imageware Systems Inc.*, Case No. 6:12-cv-00499, Docket No. 1355 ("*Imageware*") at 1355; *Blue Spike LLC v. Adobe Systems Inc.*, Case No. 6:12-cv-00499, Docket No. 1362 ("*Adobe*") at 8

### (4) MED's suggestion of delay is unsupported and any delay is, at best, minimal

Finally, MED raises a red herring at the end of its discussion of the private interest factors. It suggests that it will suffer prejudice from delay if this case is transferred to Oregon. Any such delay would be very short, as the District of Oregon very swiftly sets initial case management conferences under its Local Rule 16 upon receiving a transferred case from another District. MED implicitly concedes this where it admits that the public-interest factor of court congestion is neutral to this venue analysis.[9] Moreover, even if a delay occurred, MED would suffer no prejudice because its complaint does not request a preliminary injunction, and it has not moved for a preliminary injunction.[10] Accordingly, even if MED prevails in this suit, any delay would be dealt with by merely awarding additional money damages to cover these few weeks.

### C. The public interest factors weigh in favor of transfer

MED does not dispute that the District of Oregon is more familiar than this court with Oregon law, which provides the basis for Planar's state-law counterclaims. It suggests that this court is more familiar with federal patent law merely because this court handles more patent cases and because MED has filed many other cases here. However, as discussed above, this court has often rejected the argument that a plaintiff's choice to file many cases here should weigh against a venue transfer where other factors weigh in favor of transfer. Additionally, this court has recognized that this situation manufactured by MED should not burden this court's jury pool, where neither party has any business tie to this District that is relevant to this case:[11]

> The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947); *In re Volkswagen I*, 371 F.3d at 206. This factor analyzes the "factual connection" that a case has with both the proposed and transferor venues. *See id.* Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *In re Volkswagen II*, 545 F.3d at 318

---

[9] Opposition at page 17
[10] Complaint at ¶ 26 (having no prayer for a *preliminary* injunction)
[11] *Kronos* at 9–10; *Iris ID* at 8–9; *Adobe* at 9; *Google* at 9; *SoundHound* at 9; *Imageware* at 9–10; *Zietra* at 9

(in a products liability suit, disregarding local interest of citizens who used the [10] widely sold product within the transferor venue); *In re TS Tech*, 551 F.3d at 1321. Thus, when products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue. *In re Nintendo*, 589 F.3d at 1198.

### D. The balance of factors weighs heavily in favor of transfer to the District of Oregon

All of the private interest factors continue to weigh in favor of transferring this case to the District of Oregon. Among the public interest factors, the parties agree that one factor (court congestion) is neutral, and the other three continue to weigh in favor of transfer. At best, MED has raised facts that make one additional public interest factor either neutral (under some decisions of this court) or weigh "slightly" against transfer (under other decisions of this court). "The one factor that slightly weighs against transfer does so only because Plaintiff serially filed dozens of cases in this district and, therefore, is of limited importance."[12]

Accordingly, the balance of factors weighs heavily in favor of transferring this case to the District of Oregon.

### IV. Conclusion

For the reasons stated in Planar's motion, this court should dismiss this case because it was filed in an improper venue. In the alternative, for the alternative reasons stated in Planar's motion, this court should transfer this case to the District of Oregon.

Date: August 11, 2014

        /s/ Daniel H. Fingerman
Daniel S. Mount, Esq. (Cal. Bar No. 77517)
Kathryn G. Spelman, Esq. (Cal. Bar No. 154512)
Daniel H. Fingerman, Esq. (Cal. Bar No. 229683)
Mount, Spelman & Fingerman, P.C.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose CA 95110-2740
Phone: (408) 279-7000
Fax: (408) 998-1473

---

[12] *Kronos* at 10 (citing *GeoTag v. Starbucks Corp.*, 2:10-cv-572, 2013 WL 890484, at *6 (E.D. Tex. Jan. 14, 2013)); *Iris ID* at 9; *Adobe* at 10; *Google* at 10; *SoundHound* at 10; *Imageware* at 10; *Zietra* at 9

>Email: dmount@mount.com; kspelman@mount.com;
>dfingerman@mount.com

>Counsel for Planar Systems, Inc.

## Certificate of Service

The undersigned certifies that on the date this document is electronically filed, all counsel of record who have consented to electronic service are being served with a copy of this document via the court's ECF system pursuant to Local Rule CV-5(a)(3)(C).

Dated: August 11, 2014

/s/ Daniel H. Fingerman