IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| **MASS ENGINEERED DESIGN, INC.,** § § | |
| Plaintiff, § § | |
| § | CAUSE NO. 6:14-CV-414 |
| v. § § | |
| **PLANAR SYSTEMS, INC.,** § § | |
| Defendant. § | |

## ORDER

Before the Court is Defendant Planar Systems, Inc.'s ("Planar") Motion to Dismiss or to Transfer Venue to the District of Oregon (Docket No. 11). For the following reasons, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the Motion. The Court **DENIES** Planar's request for dismissal. However, the Court **CONDITIONALLY GRANTS** Planar's request for transfer to the District of Oregon. The Court will retain jurisdiction over Planar through the claim construction process. This transfer will become effective the day the Court issues its claim construction opinion.

## BACKGROUND

Plaintiff Mass Engineered Design, Inc. ("Mass") alleges that Planar infringes U.S. Patent Nos. RE36,978 ("the '978 Patent") and 8,102,331 ("the '331 Patent") (collectively, "the patents-in-suit"). Docket No. 1 at 1. Planar filed the instant motion to dismiss or transfer venue from the Eastern District of Texas to the District of Oregon. Mass is a limited liability company organized under the laws of Ontario, Canada. *Id.* Planar is an Oregon corporation, with its principal place of business in Beaverton, Oregon. *Id.*

## APPLICABLE LAW

*Transfer Pursuant to 28 U.S.C. § 1404*

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Nintendo*, 589 F.3d at 1198; *In re Volkswagen I*, 371 F.3d at 203. The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Nintendo*, 589 F.3d at 1198; *In re Volkswagen I*, 371 F.3d at 203.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is

"clearly more convenient" than the transferor venue. *In re Nintendo*, 589 F.3d at 1200; *In re Volkswagen II*, 545 F.3d at 315. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 315.

## ANALYSIS

*Planar's Motion to Dismiss for Improper Venue*

Planar first argues that the Court should dismiss this case for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. §§ 1400(b), 1406(a). Planar argues that it has no "regular and established place business" in this District, as required by the venue statute 28 U.S.C. § 1400(b). Docket No. 11 at 2–3. The Federal Circuit, however, has held that "[v]enue in a patent action against a corporate defendant exists wherever there is personal jurisdiction." *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005).

The operation of an interactive website can be sufficient to establish personal jurisdiction over out-of-state defendants. *See Seoul Semiconductor Co. v. Nichia Corp.*, 2008 WL 4252444, at *1 (E.D. Tex. Sept. 10, 2008) ("The website is more than just a passive site and provides sufficient interactivity to satisfy the minimum contacts requirement."); *AdvanceMe, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669, 673 (E.D. Tex. 2006). Mass has made a *prima facie* showing that the exercise of personal jurisdiction over Planar is appropriate. *See* Docket No. 1 at 2 ("Defendant has an interactive website that is accessible from the State of Texas."); *id.* at 2– 3 ("Defendant . . . makes, distributes, imports, offers for sale, sells, advertises, and/or uses, multi-monitor display stands and/or systems, including the accused products identified herein, that practice the claimed multi-display systems of the Patents-in-Suit in the Eastern District of

3

Texas."). Planar has not disputed these allegations for purposes of establishing venue, nor has it established that the exercise of jurisdiction over it would offend traditional notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985). Thus, Planar's Motion to Dismiss for Improper Venue is **DENIED**.

*Planar's Motion to Transfer Venue*

Planar alternatively moves to transfer this case to the District of Oregon pursuant to 28 U.S.C. § 1404(a).

**A. Threshold – Eligibility for Transfer**

Planar argues that because its principal place of business is in the District of Oregon, venue is proper there. Docket No. 11 at 3. Mass does not dispute that venue would be proper in the District of Oregon. Docket No. 12 at 10. Therefore, the threshold determination is satisfied.

**B. Private Factors**

    **1.** *Relative Ease of Access to Sources of Proof*

Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316. Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See id.* This factor will turn upon which party will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues. *See, e.g.*, *In re Nintendo*, 589 F.3d at 1199; *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *In re Volkswagen II*, 545 F.3d at 314–15. However, documents that have been moved to a particular venue in anticipation of litigation should not be considered. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir.

4

2009). Presumably, the bulk of the discovery material relating to a corporate party is located at the corporate headquarters. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010).

Planar argues that this factor favors transfer because most of its evidence is located either in the District of Oregon or in Taipei, Taiwan. Planar asserts that it does not design or manufacture the accused products. Docket No. 11 at 5. Instead, it "acquires the accused products from a supplier in Taiwan and resells them in the United States." *Id.* Therefore, Planar argues, while most of its relevant evidence "appears to be in Planar's offices in Beaverton, Oregon" or in its Taiwan offices, "[s]till more relevant evidence . . . is in the possession of the Taiwanese supplier." *Id.* In response, Mass argues that this factor weighs against transfer. Docket No. 12 at 11. Mass points to its own evidence held by counsel in Houston, Texas and argues that "most of the relevant documents relating to the accused products are located outside the United States, in Taiwan." *Id.* at 12.

Mass admits that its documents are not located in this District.[1] Additionally, as the accused infringer, Planar is likely to possess a larger volume of documents relevant to this litigation. *See In re Nintendo Co.*, 589 F.3d at 1199 ("[I]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer."). Here, Planar identifies evidence in Oregon. While some of Planar's evidence also appears to be located in Taiwan, this does not weigh against transfer as those documents will have to be transported either to this District or to the District of Oregon. Accordingly, this factor favors transfer.

2. *Convenience of Witnesses*

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *In re Volkswagen I*, 371 F.3d at 204.

---

[1] Houston, Texas is within the Southern District of Texas. Further, the fact that Mass's litigation counsel possesses at least some relevant documentation at its offices does not weigh heavily in the analysis. *See In re Hoffman-La Roche Inc.*, 587 F.3d at 1336–37.

All potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case or their likelihood of being called to testify at trial. *See In re Genentech*, 566 F.3d at 1343 ("Requiring a defendant to show that [a] potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary."). The Fifth Circuit has adopted a "100 mile rule" to analyze this factor. *See In re Volkswagen I*, 371 F.3d at 204–05 (considering the respective distances between witnesses and the transferor and transferee venues when the venues are more than 100 miles apart).

Planar argues that this factor favors transfer. Docket No. 11 at 7. Planar identifies two employee witnesses and two third-party witnesses who reside in Oregon. *Id.* at 5–6. Planar also argues that for any witnesses traveling from Taiwan, the District of Oregon is approximately 1,600 miles closer than this District. *Id.* at 7. Finally, Planar contends that these international witnesses "would lose much less productive time" if the case were transferred because "they could use Planar's offices in Beaverton as a base of operations to work while they are waiting to testify." *Id.* Mass responds that this factor "is, at worst, neutral." Docket No. 12 at 15. Mass identifies its own two witnesses as residents of Toronto, Ontario, Canada. *Id.* Mass argues that the distance from Toronto to Tyler, Texas is approximately half the distance from Toronto to Portland, Oregon. *Id.* Further, Mass contends that "significant travel will be involved regardless of whether this case proceeds in this District or in Oregon." *Id.* at 16.

Here, Planar identifies several witnesses that are located in Oregon, while there are no witnesses located in this District. Although transfer to Oregon would force Mass's corporate witnesses to travel further for trial, it would also reduce the distance for witnesses traveling from

6

Taiwan, whom the parties agree are likely to have relevant knowledge. Accordingly, this factor favors transfer.

### 3. *Availability of Compulsory Process*

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue. *See In re Volkswagen II*, 545 F.3d at 316. This factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *Id.* "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338.

The amended Rule 45 provides the presiding court with the power to issue nationwide deposition subpoenas and compel testimony so long as the trial, hearing, or deposition is to take place within 100 miles of the witness's residence or regular place of business. FED. R. CIV. P. 45(a)(2), 45(b)2, 45(c)(1)(A); *see* Committee Notes on Rules—2013 Amendment ("The [2013] amendments recognize the court where the action is pending as the issuing court, permit nationwide service of subpoena and collect in a new subdivision (c) the previously scattered provisions regarding place of compliance."). The proffering party now has the option to depose the non-party witness near that witness's residence or regular place of business, and later present the witness's deposition testimony at trial without the involvement of a second district court. *See* FED. R. CIV. P. 32(a)(4) ("A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds . . . that the witness is more than 100 miles from the place of hearing or trial . . . .").

Planar asserts that although no known third-party witnesses reside in or near the Eastern District of Texas, two former Planar employees are subject to subpoena power in the District of Oregon. Docket No. 11 at 6–7. Planar acknowledges that this Court has nationwide power to

7

compel witnesses to attend depositions; however, Planar submits that "live testimony is still the preferred way to offer evidence at trial." *Id.* In response, Mass argues that "[i]t is hard to imagine that [Planar's] former employees would have retained information about product sales, or that their memory would be any more pertinent than the company's own business records of sales." Docket No. 12 at 14. Mass contends that regardless of venue, Planar will at least be able to present these witnesses' deposition testimony at trial. *Id.* at 14–15.

Planar has identified two non-party witnesses who reside in the District of Oregon, and neither party identifies a single non-party witness subject to compulsory process in the Eastern District of Texas. Under the amended Rule 45, the Court has power to issue nationwide service of subpoenas. The overall effect of the amended Rule 45 is to lessen the likelihood that this factor will be determinative in the analysis. In light of the foregoing, this factor only slightly favors transfer.

  **4.**  *Other Practical Problems*

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor of or against transfer. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*In re Volkswagen III*"). Further, "the existence of multiple lawsuits involving the same issues 'is a paramount consideration when determining whether a transfer is in the interest of justice.'" *In re Vicor Corp.*, 493 Fed. App'x. 59, 61 (Fed. Cir. 2012) (quoting *In re Volkswagen III*, 566 F.3d at 1351).

Planar argues that practical considerations favor transfer to the District of Oregon. According to Planar, the "patents asserted in this case claim large 'display systems' which have large electronic screens mounted on heavy bases." Docket No. 11 at 8. Thus, Planar argues,

8

"both parties would have to rent facilities near this courthouse to store exhibits during trial, which would cause both parties to incur necessary costs." *Id.* Planar also submits that any employee-witnesses traveling from Taiwan will avoid lost productivity if they can work from Planar's Beaverton, Oregon offices during trial. *Id.* Finally, Planar argues that other lawsuits filed by Mass in the Eastern District of Texas weigh neutrally, or only slightly in favor of transfer. Docket No. 13 at 4–5.

Mass responds that Planar's concerns about "heavy, bulky devices" at trial have not been an issue a previous trial in this District. Docket No. 12 at 16. Mass also argues that "as a practical matter, any witness in this case is not likely to testify for more than a day – the lack of a 'base of operations' [for Planar's Taiwan witnesses] would not be a significant inconvenience." *Id.* at 17. Mass emphasizes that given this Court's familiarity with the technology and the existence of co-pending cases, transfer would delay the litigation and result in a waste of judicial resources. *Id.* at 17–18.

Mass first filed suit against other defendants in this Court in 2006, alleging infringement of the '978 Patent. *Mass Engineered Design, Inc. et al. v. Ergotron, Inc. et al.*, Cause No. 2:06-cv-272 (E.D. Tex. July 7, 2006) ("*Ergotron*"). During that litigation, the Court conducted a *Markman* hearing and construed disputed terms of the '978 Patent. *See Ergotron*, Docket Nos. 157, 266, 344, 372. After a seven-day jury trial in November 2008, a jury found that asserted claims of the '978 Patent were infringed and not invalid. *Ergotron*, Docket No. 660. This Court entered judgment on the jury verdict and ordered an ongoing permanent injunction. *Ergotron*, Docket No. 744. In November 2009, Mass filed another suit against several defendants, including Planar. *See Mass Engineered Design, Inc. et al. v. 9X Media, Inc. et al.*, Cause No. 2:09-cv-358 (E.D. Tex. Nov. 12, 2009) ("*9X Media*"). However, this case was terminated on

August 6, 2012 after the parties filed a stipulation of dismissal without prejudice. *9X Media*, Docket Nos. 390, 391.

While the Court does have some experience with the '978 Patent, the Court does not have any meaningful experience with the '331 Patent. Additionally, the technology embodied in the patents-in-suit is not so complex that this Court's experience should dominate the transfer analysis. *See, e.g.*, '331 Patent, at [57] ("Described herein is a support system for electronic displays having a support column and a bowed support arm having at least two docking stations. . . ."). Thus, while the Court has some familiarity with one of the patents in this case, this is not "significant familiarity" as Mass alleges. *See* Docket No. 16 at 7.

However, Mass is correct that a transfer to the District of Oregon would require multiple courts to handle related cases, leading to a "waste[] of time, energy and money that § 1404 was designed to prevent." Docket No. 12 at 18 (citing *Volkswagen II*, 566 F.3d at 1351). Due to significant overlap, the Court consolidated this case with four co-pending cases. *See* Docket No. 25. All five cases involve the same Plaintiff and similar or overlapping patents. *See Mass Engineered Design, Inc. v. SpaceCo Business Solutions, Inc.*, Cause No. 6:14-cv-411, Docket No. 1. Additionally, this Court already has a claim construction hearing scheduled for the consolidated cases. Transfer would result in duplicative and repetitive efforts in multiple courts, increasing the burden of time, resources, and money on the judicial system and the parties. *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1345 (Fed. Cir. 2010) (denying a petition for mandamus when "the district court correctly held a denial of transfer would produce gains in judicial economy"). Accordingly, this factor weighs strongly against transfer.

## C. Public Factors

### 1. *Local Interest*

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206. This factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *Id.* Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *In re TS Tech*, 551 F.3d at 1321; *In re Volkswagen II*, 545 F.3d at 318 (disregarding local interest of citizens who used the widely sold product within the transferor venue in a products liability suit). Thus, when products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue. *In re Nintendo*, 589 F.3d at 1198.

Planar contends that this factor favors transfer because it is headquartered in the District of Oregon. Docket No. 11 at 8–9. In its response, Mass contends that this District has a more localized interest "due to [its] significant history with the parties and the asserted patents and technology." Docket No. 12 at 18. Further, Mass argues that "Taiwan's interest [is] arguably higher than Oregon's" because the accused products are designed and manufactured there. *Id.*

Here, there is no specific local interest in this District and significant local interest in Oregon, where Planar is headquartered. *See In re TS Tech*, 551 F.3d at 1321 (disregarding generalized judicial interest in favor of a particularized local interest). Accordingly, this factor favors transfer.

### 2.  *Familiarity of Forum with Governing Law*

Planar argues that this factor favors transfer. Planar acknowledges that "[a]ll federal courts are presumed equally familiar with federal patent law." Docket No. 11 at 9. However, Planar submits that the District of Oregon is better suited to apply Oregon state law, "which provides the basis for Planar's state-law counterclaims." Docket No. 13 at 6.

Planar has not asserted any state law counterclaims at this time. Thus, without further explanation or evidence of Planar's claims, this Court is unable to evaluate either district's familiarity with governing law, and this factor is neutral.

### 3.  *Remaining Public Factors*

The remaining two public factors (court congestion and conflicts of law) are not disputed by the parties, and are therefore neutral in the analysis.

### D.  Summary of Factors & Conditional Transfer of Planar

Here, three factors favor transfer, one factor slightly favors transfer, three factors are neutral, while only one factor strongly weighs against transfer. Accordingly, Planar has shown that transfer of this case to the District of Oregon is clearly more convenient for parties and witnesses.

However, to avoid duplicative work by multiple courts, the Court will retain this case until it issues its claim construction opinion.[2] Retaining Planar through the claim construction phase serves two important purposes. *See ACQIS LLC v. EMC Corp.*, Cause No. 6:13-cv-639, Docket No. 43 at 11–14 (E.D. Tex. Sept. 10, 2014). First, it conserves judicial resources by requiring only one district court to address the disputed claim terms, and second, it eliminates the risk of inconsistent claim constructions. *See In re Vistaprint Ltd.*, 628 F.3d at 1346; *In re*

---

[2] The Claim Construction hearing is set for April 28, 2015 at 9:00 a.m. before Judge K. Nicole Mitchell.

*Google Inc.*, 412 Fed. App'x. 295, 296 (Fed. Cir. 2012) ("Courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice and having one trial court decide all of these claims clearly furthers that objective.") (citing *Cont'l Grain Co. v. Barge FB–585*, 364 U.S. 19, 26 (1960)).

Another concern with the transfer is the potential for significant delay to the parties in getting back on schedule for a trial date in the transferee district. Motions to transfer can often disrupt and stall litigation, increasing costs and adding years to the time of final resolution of the dispute. To minimize the potential problem of undue delay, once the Eastern District of Texas enters its conditional transfer order, a copy will be promptly forwarded to the District of Oregon. The District of Oregon will open a case file and assign a judge to the transferred case. It is hoped that the judge will be able to accommodate the case's current trial dates, insofar as consistent with his or her own schedule.

Upon receipt of this Court's claim construction order and final order of transfer, Planar shall immediately inform the transferee judge and request a case scheduling conference for all future proceedings through trial. Until then, all orders entered in the Eastern District of Texas remain in effect and any motions will be filed in the Eastern District. Because the parties will already know its new case number and judge, any delay resulting from the transfer will be minimized, and the parties should be able to proceed to trial on a schedule as closely related to their original schedule as possible.

## CONCLUSION

For the reasons set forth above, Planar has not established that venue is improper and that the case should be dismissed. Thus, Planar's Motion to Dismiss for Improper Venue (Docket No. 11) is **DENIED**.

However, Planar has shown that transfer of this case to the District of Oregon is clearly more convenient for the parties and witnesses. Accordingly, Planar's Motion to Transfer Venue (Docket No. 11) is **CONDITIONALLY GRANTED**. Planar **WILL BE TRANSFERRED** to the District of Oregon immediately upon entry of this Court's *Markman* opinion.[3] Until that time, all parties shall continue to operate under their existing docket control orders. All motions or other matters shall be filed in this Court until the transfer becomes effective. Upon receipt of this order in the District of Oregon, the conditionally transferred case will be immediately assigned to a judge who will be informed of the case management schedule and progress of these cases. The judge will be requested to accommodate that schedule as nearly as possible, consistent with his or her own schedule. Immediately upon receipt of this Court's claim construction order, Planar shall notify its assigned judge in the District of Oregon, and shall request a case management conference be set as soon as possible.

**So ORDERED and SIGNED this 24th day of March, 2015.**



_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**

---

[3] This Court will also rule upon any Motions to Reconsider relating to its *Markman* opinion.